UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN D. CONRY                           CIVIL ACTION

VERSUS                                  NO: 10-4599

GERALD DAUGHERTY AND THE HERB           SECTION: R(1)
IMPORT COMPANY

### ORDER AND REASONS

Before the Court is plaintiff John Conry's motion to strike
or alternatively for a more definite statement,[1] defendants
Gerald Daugherty, the Herb Company and the Herb Import Company's
motion for judgment on the pleadings,[2] and defendants' motion to
dismiss interpleader.[3]  For the following reasons, the Court
denies plaintiff's motion to strike or alternatively for a more
definite statement, grants defendants' motion for judgment on the
pleadings and grants defendants' motion to dismiss interpleader.

I.    BACKGROUND

This suit arises out of the purchase and financing of real
property located at 123 Fremont Street in New Orleans, Louisiana.
Plaintiff John Conry filed a *pro se* complaint on December 22,

---

[1]  R. Doc. 28.

[2]  R. Doc. 11.

[3]  R. Doc. 40.

2010.[4]  Later, Conry filed an amended complaint and a response to the Court's RICO standing order.[5]

Conry alleges that in January 2007, he contracted with Daugherty to purchase a renovated home.  In connection with the purchase, Conry claims that Daugherty sent him a "Purchase Agreement" in which Daugherty promised to spend $60,000 renovating the property.  Conry further claims that Daugherty represented he would not use substandard materials in completing the renovations.  In May 2007, Conry alleges that because renovations were not complete, he entered into a second "Purchase Agreement" with Daugherty in which Daugherty again promised to spend at least $60,000 renovating the property.  Conry claims that Daugherty made these promises and representations despite intending to spend substantially less than $60,000 renovating the property and intending to use substandard materials to complete the renovations.

In July 2007, the parties entered into an "Act of Sale," with Daugherty financing the $180,000 purchase price.  Conry alleges that soon after taking possession of the property, he began to recognize a number of problems with the house.  In September 2009, Conry claims that a third party prepared a report indicating that Chinese drywall was used throughout the house.

---

[4]  R. Doc. 1.

[5]  R. Doc. 6; R. Doc. 9.

2

Conry alleges that in November 2009, after learning of the potential health risks associated with Chinese drywall, he moved out of the house.

In July 2010, Conry claims that Daugherty offered to sell the property to Conry for a discounted sale price of $150,000 if Conry refinanced the property, but that Conry declined the offer. Daugherty demanded that Conry bring his mortgage payments on the property up to date.  Conry, therefore, issued a check for $10,5000.  In August 2010, Conry claims that Daugherty informed him that the check was returned "account closed."  Conry alleges that he offered to collect the funds from the contractor to pay Daugherty, but Daugherty told Conry that he should continue renovating the property and that Daugherty would work with Conry on the mortgage payments.  As a result of Daugherty's representations, Conry claims to have spent $33,250 renovating the property during the summer and fall of 2010.

In September 2010, Conry claims that Daugherty demanded that Conry make additional mortgage payments.  Specifically, Conry claims that Daugherty called Conry and threatened to take the returned check to the District Attorney if Conry did not renovate the property, return it to Daugherty, waive his right to sue Daugherty, and pay double the amount of past due mortgage payments.  Conry responded by writing Daugherty a check for $3,500, but the check was returned "not sufficient funds."  Conry alleges that he immediately had his contractor issue a cashier's

check for $3,500 to Daugherty.  Conry asserts that he was therefore $7000 in default on his mortgage.

In December 2010, Conry claims that Daugherty sent him a text message, again threatening that if Conry did not return the property to Daugherty, Daugherty would take the returned checks to the District Attorney.  Daugherty's attorney also allegedly sent paperwork to Conry regarding the return of the property to Daugherty.  Conry refused to go forward with the sale.  Conry alleges that as a result, Daugherty's attorney sent a demand letter to collect the outstanding debt on the mortgage, but demanded payment of $14,000 in debt when only $7,000 was owed. Defendants subsequently filed a "Petition for Executory Process" in state court to cause the sale of the property.  Conry claims that the petition included false statements regarding the debt owed by Conry.

In response to the alleged "blackmail scheme" by Daugherty, Conry filed this RICO action.  Specifically, Conry asserts RICO claims under 18 U.S.C. § 1962(a) and (b), in addition to state law claims for negligence, fraud, conversion and quantum meruit. Additionally, on April 12, 2011, plaintiff filed a complaint in interpleader.[6]

---

[6]  R. Doc. 14.

II.  **MOTION TO STRIKE OR IN THE ALTERNATIVE FOR A MORE DEFINITE**
     **STATEMENT**

     **A) Motion to Strike**

     Plaintiff moves to strike defendants' motion for judgment on
the pleadings on the grounds that defendants previously filed a
Rule 12(b)(6) motion and "the allegations contained in
Defendant's 'Facts' section are scandalous and somewhat silly."[7]
Federal Rule of Civil Procedure 12(f) provides that "[t]he court
may strike from a pleading an insufficient defense or any
redundant, immaterial, impertinent, or scandalous matter."  Fed.
R. Civ. P. 12(f).  Defendants' motion is not a "pleading" and
Rule 12(f) is therefore inapplicable.  *See* Fed. R. Civ. P. 7(a)
(listing the filings that can be considered "pleadings);
*Marquette Transp. Co. v. Trinity Marine Prods.*, *Inc.*, Nos. 06-
826, et al., 2006 WL 2349461, at *1 n.1 (E.D. La. Aug. 11, 2006)
(denying motions to strike "[b]ecause Rule 12(f) contemplates
only striking 'pleadings' as defined by the Federal Rules, and
because plaintiffs' statements are not pleadings").

     To the extent that Conry requests that the Court use its
inherent power to strike the motion or portions of the motion,
the request is denied.  *See Garrett v. Selby Connor Maddux &*
*Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (dismissing appeal with
prejudice under court's inherent power to disregard abusive

---

[7]  R. Doc. 28-1 at 3-4.

5

filings); *Calkins v. Shapiro & Anderson, L.L.P.*, No. 05-815, 2005
WL 3434718, at *3 (D. Ariz. Dec. 13, 2005) (discussing
possibility that court has inherent power to strike motions).
Conry argues that defendants may not raise new arguments in their
Rule 12(c) motion that were not included in the original Rule
12(b)(6) motion filed in the Chinese Drywall multi-district
litigation.  The Federal Rules allow a defendant to assert the
defense of failure to state a claim in a Rule 12(c) motion for
judgment on the pleadings even if he previously raised it in a
Rule 12(b)(6) motion.  Fed. R. Civ. P. 12(g)(2), (h)(2)(B).
Additionally, the MDL court never ruled on the motion to dismiss,
and the parties failed to designate the motion as necessary to
continued litigation as required by the local rules.  Local Civil
Rule 10.2.  Further, after the case was separated, Conry filed an
amended complaint adding factual allegations to his RICO claims,
as well as a RICO case statement specifying the subsections of
section 1962 defendants allegedly violated.  For the foregoing
reasons, the Court finds that defendants are not limited to the
pattern of racketeering argument raised in their original Rule
12(b)(6) motion.

     Moreover, the Court will not strike the "Facts" section of
defendants' motion for judgment on the pleadings.  A motion for
judgment on the pleadings is granted only "when the pleading to
be stricken has no possible relation to the controversy."  *In re
Chinese Mfd. Drywall Prods. Liab. Litig.*, 680 F. Supp. 2d 780,

6

788 (E.D. La. 2010) (quoting *Augustus v. Bd. of Pub. Instruction of Excambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962)).  The Court will not strike the factual allegations in defendants' motion from the record.

Accordingly, the Court DENIES plaintiff's motion to strike.

**B)   Motion for More Definite Statement**

A district court will grant a motion for a more definite statement pursuant to Rule 12(e) when the pleading at issue "is so vague or ambiguous that a party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).  The motion must state the defects in the pleading and the details desired. *See id.*

Conry moves under Rule 12(e) for a more definite statement with respect to defendants' motion for judgment on the pleadings. As a preliminary matter, Conry has cited no authority permitting a motion for more definite statement in this context.  A motion for more definite statement is authorized only as to "a pleading to which a responsive pleading is allowed." Fed. R. Civ. P. 12(e).  Pleadings do not include "[m]otions and [o]ther [p]apers." *See* Fed. R. Civ. P. 7(a)-(b).  Accordingly, Rule 12(e) does not authorize Conry's motion for more definite statement with respect to defendants' motion for judgment on the pleadings.

In any event, defendants' motion is neither vague nor ambiguous.  The arguments in the motion are clearly limited to

7

attacking the allegations in the complaint.  The Court does not find that defendants' motion is ambiguous as to whether they move for judgment on the pleadings or for summary judgment. Accordingly, the Court DENIES Conry's motion for more definite statement, and will treat defendants' motion as a motion for judgment on the pleadings.

## III. MOTION FOR JUDGMENT ON THE PLEADINGS

### A) LEGAL STANDARD

A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6).  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1960 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  But the Court is not bound to accept

as true legal conclusions couched as factual allegations.  *Iqbal*, 129 S.Ct. at 1949.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true.  *Id.*  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.  *Id.*  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.  *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed.  *Twombly*, 550 U.S. at 555; *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007).  In considering a motion to dismiss RICO claims, the Court must consider the well-pleaded facts in the complaint, including the RICO case statement filed in accordance with the RICO standing order.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

**B) Pattern of Racketeering Activity**

Conry claims that the defendants violated RICO, 18 U.S.C. §§ 1962(a), (b).  Specifically, Conry alleges that Daugherty engaged

9

in multiple acts of mail fraud, wire fraud and extortion in relation to the sale of the Fremont Street property and the subsequent debt collection.

Regardless of the subsection, RICO claims under section 1962 have three common elements: "1) a person who engages in 2) a pattern of racketeering activity, 3) connected to the acquisition, establishment, conduct or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)). To allege a "pattern of racketeering activity," a plaintiff must show that the defendant committed two or more predicate offenses that are (1) related and (2) amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

The requirement of "continued criminal activity" reflects Congress's concern with "long-term criminal conduct." *Id.* at 242. Continuity is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. An open period of continuity refers to a "specific threat of repetition extending indefinitely into the future" or "that the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.* at 242. A closed period of continuity may be demonstrated by a series of

10

related predicates extending over a substantial period of time.
*Id.*

Here, plaintiff has failed to allege open-ended continuity.
The alleged acts relating to the financed sale and debt
collection of a single property do not project into the future
with a threat of repetition.  The sale of the property to Conry
is complete.  Additionally, any efforts to collect mortgage
payments concluded with the state foreclosure proceedings.  *See*
*Castrillo v. Am. Home Mortg. Servicing, Inc.*, 670 F. Supp. 2d
516, 531 (E.D. La. 2009) (stating that fraudulent debt collection
and executory foreclosure action do not by their nature project
into the future with a threat of repetition, but rather involve a
one-time resolution of disputed property rights).  In addition,
there is no allegation that the alleged predicate acts constitute
defendants' "regular" way of conducting an ongoing legitimate
business.  Therefore, the Court finds that plaintiff has not
alleged an open-ended pattern of racketeering activity.

The Court finds that Conry has also failed to allege closed-
ended continuity.  Conry alleges that defendants engaged in
predicate acts from January 2007 to January 4, 2011.
Specifically, plaintiff asserts three predicate acts relating to
the sale of the property from January 2007 to April 2007.[8]

---

[8]  The fourth alleged predicate act labeled "[c]ompletion of
the above acts of fraud" does not state a separate predicate act.
R. Doc. 9 at 4.

Plaintiff does not allege any further predicate acts occurred
until September 2010.  In evaluating whether a plaintiff has
sufficiently pleaded closed-ended continuity, courts generally
require the alleged predicate acts to occur over a period longer
than one year.  *See, e.g., United States v. Hively*, 437 F.3d 752,
761 (8th Cir. 2006) (defining closed-ended continuity as related
acts continuing over a period of time lasting at least one year).
Although predicate acts occurring over a period greater than one
year can establish closed-ended continuity, such acts do not
necessarily establish closed-ended continuity and courts use a
"natural and common sense approach to RICO's pattern element."
*H.J., Inc.*, 492 U.S. at 237; *see also Gamboa v. Velez*, 457 F.3d
703, 709 (7th Cir. 2006) (stating that the "natural and
commonsense result" when "a complaint explicitly presents a
distinct and non-reoccurring scheme with a built-in termination
point and provides no indication that the perpetrators have
engaged or will engage in similar misconduct, [is that] the
complaint does not sufficiently allege continuity ... even if the
purported scheme takes several years to unfold, involves a
variety of criminal acts, and targets more than one victim"); *Sw.
Realty, Ltd. v. Daseke*, No. 89-3055, 1990 WL 85921, at *3-5 (N.D.
Tex. May 9, 1990) (holding that even if the "closed period"
extended from January 1988 to November 1989, plaintiff failed to
plead closed-ended continuity when the alleged predicate acts
were relatively few in nature, represent similar type conduct in

each instance, do not involve an overly complicated scheme, pertain to one participant and injure only one victim). Plaintiff alleges three predicate acts from January 2007 to April 2007.  The remaining alleged predicate acts occurred from September 2010 to January 2011.  The sporadic and isolated conduct alleged does not establish closed-ended continuity.  *See H.J. Inc.*, 492 U.S. at 239 (stating that a person is not subject to liability "simply for committing two widely separated and isolated criminal offenses"); *Monarch Normandy Square Partners v. Normandy Square Assocs. Ltd. P'ship*, 817 F. Supp. 908, 914-15 (D. Kan. 1993) (holding that plaintiffs failed to allege closed-ended continuity when predicate acts related to two apartment sales separated in time by approximately one year); *Disandro-Smith & Assocs., P.C. v. Edron Copier Serv., Inc.*, 722 F. Supp. 912, 916 (D.R.I. 1989) (holding three sales of used copy machines within two years did not meet the continuity element).  The Court, therefore, finds that the complaint fails to allege closed-ended continuity.

Additionally, the Fifth Circuit has consistently held that "where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown." *Word of Faith Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 123 (5th Cir. 1996).  Here, the credit sale and efforts to secure payment of amounts financed are part of a single, discrete transaction.  *See Stewart v. GMAC*

13

*Mortg. LLC*, No. 10-149, 2011 WL 1296887, at *4 (S.D. Miss. Mar. 31, 2011) (holding that plaintiff failed to plead a pattern of acts because the alleged fraudulent statements in connection with the foreclosure of plaintiff's home "were all part of one transaction and do not qualify as a 'pattern of racketeering' activity"); *Castrillo*, 670 F. Supp. 2d at 531 (finding that alleged multiple acts related to the refinance and attempted foreclosure of plaintiff's home were a single, discrete transaction).  Additionally, this single transaction has a definite termination point with the completion of the state court foreclosure proceedings.  *Cf. Larco Towing, Inc. v. Newpark Drilling Fluids, LLC*, Nos. 09-2928 et al., 2010 WL 1416550, at *2 (E.D. La. Mar. 31, 2010) (stating that cases where courts found no pattern of racketeering activity because the predicate acts were "part and parcel of a single otherwise lawful transaction" each addressed conduct that had an inherent and definite termination point and did not present a future threat of repetition).

Plaintiff relies on *Trevino v. Pechero* in support of his argument that he has sufficiently alleged a pattern of racketeering activity.  592 F. Supp. 2d 939 (S.D. Tex. 2008).  In *Trevino*, the plaintiffs alleged that the owner of the commercial office they rented and his real estate agent participated in a scheme to extort money from them.  *Id.* at 942.  Specifically, plaintiffs alleged that defendants threatened them into

14

remodeling their offices using one of defendant's construction companies and paying double rent. *Id.* The court stated "the construction and rent are two separate events and thus two occasions of attempted extortion and two predicate acts under RICO." *Id.* at 945. The court held that because at least two predicate acts were well pleaded, plaintiffs had pleaded sufficiently a pattern of racketeering activity. *Id.* at 946. Notably, the court in *Trevino* did not discuss either open- or closed-ended continuity or whether the alleged predicate acts were "part and parcel of a single, otherwise lawful transaction." The Court, therefore, does not find *Trevino* to be persuasive precedent in light of the facts presented in this case.

Accordingly, the Court holds that plaintiff has failed to allege a pattern of racketeering activity.

### C) 18 U.S.C. § 1962(a)

To state a claim under 18 U.S.C. § 1962(a), a plaintiff "must allege an injury from the use or investment of racketeering income." *Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007) (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000)). The Fifth Circuit has stated that "[a]n injury arising solely from the predicate racketeering acts themselves is not sufficient." *Id.* (quoting *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 925, 929 (5th Cir. 2002)). In

15

this case, plaintiff has failed to allege that his injuries were caused by the use or investment of racketeering income.  It is clear that plaintiff's alleged injuries stem not from the use or investment of racketeering income, but from the alleged predicate acts.  Accordingly, plaintiff has failed to state a claim under section 1962(a).

### D) 18 U.S.C. § 1962(b)

To state a claim under 18 U.S.C. § 1962(b), plaintiff "must show that [his] injuries were proximately caused by a RICO person gaining an interest in, or control of, the enterprise through a pattern of racketeering activity." *Id.* at 357.  Plaintiff alleges that Daugherty used funds from his racketeering activity to maintain and expand his interest in the Herb Import Company. The complaint and RICO case statement, however, contain no allegations or facts to show that Conry's injuries were proximately caused by Daugherty maintaining or expanding his interest in the enterprise.  Plaintiff, therefore, has failed to state a claim under section 1962(b).

For the foregoing reasons, the Court grants defendants' motion for judgment on the pleadings and dismisses plaintiff's RICO claims with prejudice.

### IV.  MOTION TO DISMISS INTERPLEADER COMPLAINT

Under Rule 22 of the Federal Rules of Civil Procedure, "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a)(1). Plaintiff's interpleader complaint does not allege that he is exposed to possible double or multiple liability. Plaintiff's allegations that he and Daugherty have competing interests to the Fremont Street property because he seeks to have the sale declared invalid while Daugherty seeks to foreclose on the property does not provide a proper basis for interpleader. Accordingly, the Court grants defendants' motion to dismiss the interpleader complaint.

**V.    SUPPLEMENTAL JURISDICTION**

A district court may decline to exercise supplemental jurisdiction over a state law claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). The Court has wide discretion to dismiss state law claims after dismissing all federal claims. *Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999). The "general rule" in the Fifth

17

Circuit "is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Smith v. Amedisys, Inc.*, 298 F.3d 434, 446-47 (5th Cir. 2002) (quoting *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999). This rule, however, "is neither mandatory nor absolute." *Smith*, 298 F.3d at 447. In addition to the statutory provisions of section 1367(c), the Court must balance the factors of judicial economy, convenience, fairness and comity. *Id.* at 446.

Here, the Court has dismissed all federal claims. Only state claims remain, and the Court has no independent basis for jurisdiction over them. The Court has not yet addressed the merits of these claims, and as they exclusively involve issues of state law, principles of comity weigh in favor of allowing a state forum adjudicate them. The Court therefore finds that the rule counseling against the exercise of supplemental jurisdiction over state-law claims when no federal claims remain applies in this case. Accordingly, the Court dismisses the state law claims without prejudice.

## VI.  CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion to strike or in the alternative for a more definite statement, GRANTS defendants' motion for judgment on the

pleadings, and GRANTS defendants' motion to dismiss interpleader. Additionally, the Court DISMISSES the state law claims WITHOUT PREJUDICE.

New Orleans, Louisiana, this __22nd__ day of June, 2011.


_____
                    SARAH S. VANCE
         UNITED STATES DISTRICT JUDGE